Wolters Kluwer

**CT Corporation**
**Service of Process Notification**
08/21/2026
CT Log Number 553135618

## Service of Process Transmittal Summary

**TO:** Joanna Totsky
The Toro Company
8111 LYNDALE AVE S
BLOOMINGTON, MN 55420-1136

**RE:** **Process Served in Oregon**

**FOR:** The Toro Company (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Re: GRAYDON JOHN JUSTIS, a Resident of Oregon // To: The Toro Company |
| **CASE #:** | 26CV41707 |
| **NATURE OF ACTION:** | Personal Injury - Vehicle Collision |
| **PROCESS SERVED ON:** | C T Corporation System, Salem, OR |
| **DATE/METHOD OF SERVICE:** | By Process Server on 08/21/2026 at 10:38 |
| **JURISDICTION SERVED:** | Oregon |
| **ACTION ITEMS:** | CT will retain the current log<br>Image SOP<br>Email Notification, Vanessa Mason vanessa.mason@toro.com<br>Email Notification, Briata Owens briata.owens@toro.com<br>Email Notification, Joanna Totsky joanna.totsky@toro.com<br>Email Notification, Lisa Joyce lisa.joyce@toro.com |
| **REGISTERED AGENT CONTACT:** | CT Corporation System<br>780 Commercial Street? SE<br>Ste 100<br>Salem, OR 97301<br>866-401-8252<br>LargeCorporationTeam@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

# PROCESS SERVER DELIVERY DETAILS

**Date:** Fri, Aug 21, 2026
**Server Name:** ABC Legal

| | |
|---|---|
| Entity Served | The Toro Company |
| Case Number | 26CV41707 |
| Jurisdiction | OR |

| Inserts | | |
|---|---|---|
| | | |

# In the Circuit Court of the State of Oregon

## For the County of Multnomah

| | |
|---|---|
| **GRAYDON JOHN JUSTIS**,<br>a Resident of Oregon,<br><br>Plaintiff,<br><br>v.<br><br>**THE TORO COMPANY**, a Foreign Corporation; and **WESTERN EQUIPMENT DISTRIBUTORS, INC.**, a Foreign Corporation,<br><br>Defendants. | Case No. 26CV41707<br><br>**SUMMONS** |

**To:** **The Toro Company**
**R/A CT Corporation System**
**780 Commercial Street, S.E., Suite 10**
**Salem, OR 97301**

**You are hereby required to appear and defend the complaint filed against you in the above entitled action within thirty (30) days from the date of service of this summons upon you, and in case of your failure to do so, for want thereof, plaintiff will apply to the court for the relief demanded in the complaint.**

## NOTICE TO THE DEFENDANT: READ THESE PAPERS CAREFULLY!

**You must "appear" in this case or the other side will win automatically. To "appear" you must file with the court a legal document called a "motion" or "answer." The "motion" or "answer" must be given to the court clerk or administrator within 30 days along with the required filing fee. It must be in proper form and have proof of service on the plaintiff's attorney or, if the plaintiff does not have an attorney, proof of service on the plaintiff.**

**If you have any questions, you should see an attorney immediately. If you need help in finding an attorney, you may call the Oregon State Bar's Lawyer Referral Service online at www.oregonstatebar.org or by calling (503) 684-3763 (in the Portland metropolitan area) or toll-free elsewhere in Oregon at (800) 452-7636.**

[signature]
SIGNATURE OF ATTORNEY

J. Randolph Pickett, OSB #721974
PICKETT DUMMIGAN WEINGART LLP
Centennial Block, Fourth Floor
210 S.W. Morrison Street
Portland, OR 97204
Telephone: (503) 226-3628

**TO THE OFFICER OR OTHER PERSON SERVING THIS SUMMONS: You are hereby directed to serve a true copy of this summons, together with a true copy of the complaint mentioned therein, upon the individual or other legal entity to whom or which this summons is directed, and to make your proof of service on the reverse hereof or upon a separate similar document which you shall attach hereto.**

[signature]
ATTORNEY FOR PLAINTIFF

Oregon Courts
Oregon Judicial Department

# An Option for Resolving Your Dispute: Mediation

**Important Notice:** If you are receiving this form as the filing party, you must serve this form on the responding party.

## What is mediation?

- A voluntary way to resolve your case with the help of a neutral person (the mediator). Instead of having a judge decide your case, you can work with a mediator to settle your case. You can still go to trial if you do not reach an agreement.

- The mediator will help you and the other party communicate and come up with options to settle the case. The mediator does not take sides or give legal advice.

## How does mediation work?

- The mediator will explain the process at the beginning of mediation. Parties may meet with the mediator together or the mediator may meet with you each separately. Either party can ask to meet with the mediator alone.

- During mediation, each party has an opportunity to suggest ideas for moving forward. The mediator helps the parties come up with ideas and possible solutions.

- If both parties agree to a resolution, you may not need to go to court or arbitration. There is only a resolution in mediation if both parties agree to it.

## Why should I mediate?

- It can be faster, less expensive, and less stressful than a trial or hearing.
- Parties decide the outcome instead of a judge.
- Parties can find more creative ways to resolve the dispute.
- It's private and confidential (with a few exceptions).
- It gives parties an opportunity to hear each other's perspectives.
- Parties are more likely to follow mediated agreements than court judgments.
- Parties often report higher satisfaction than in a court trial.

## Things to consider before mediation.

There may be times when mediation is not appropriate. Tell your mediator or attorney if:

- Mediation poses a risk to your safety;
- You can't make decisions about your case; or
- You think you'll agree to something you don't want.

The mediator may be able to address your concerns so that you can mediate.

**Where do we meet with the mediator?**

Mediation usually happens in person or by video conference (for example, Zoom or Webex).

**Who chooses the mediator?**

Some courts will provide a mediator in landlord-tenant and small claims cases. The parties may also agree on a private mediator on their own.

Another option is to go through a Community Dispute Resolution Center (CDRC). To find one go to: Oregon Office for Community Dispute Resolution | School of Law (uoregon.edu)

You can also find private mediators using these resources:

- Oregon Mediation Association – Find a Mediator: https://ormediation.org
- The mediator search tool at Mediate.com: https://mediate.com

**How much does mediation cost?**

Some courts offer free mediation services in landlord-tenant and small claims cases. Otherwise, the cost for a mediator varies. Private mediators usually charge by the hour. Community dispute resolution centers (CDRCs) may be less expensive.

**Can I get an interpreter for mediation?**

If the court sends the case to mediation, interpreters are available for people with limited English proficiency and for people who are deaf (ASL) or hard of hearing for free. Please let your mediator or the court know that you will need an interpreter prior to your court date or mediation conference.

**How do I get my case to mediation?**

- The court may refer your case to mediation without you asking.
- You can also ask the court to send your case to mediation by filing a request for mediation (check with your local court for forms).
- You may talk with the other person directly and agree on mediation. If you decide to work with a private mediator, contact the mediator directly to learn more about their process.

**My case is going to arbitration — can I mediate my case instead?**

Yes, some courts have an established mediation program and can refer you to a mediator. In these counties, arbitration is not required if the parties don't agree on an outcome in mediation. Instead, they are referred to a judge for further case processing.

If your court does not have a mediation program, the parties can still choose to mediate with a private mediator but may be required to attend arbitration if they can't agree on an outcome.

# Local Mediation Program Information

Court location: Multnomah

## Mediation Programs

**Small Claims**
The Court requires parties to attend mediation orientation. If parties choose to mediate, a mediator will be provided for free.

**Landlord Tenant**
The Court does not provide mediators in Landlord Tenant cases. Parties can request mediation and must hire a mediator at their own expense.

**Civil**
The Court does not provide mediators in Civil cases. Parties can request mediation and must hire a mediator at their own expense.

**Probate**
The Court does not provide mediators in Probate cases. Parties can request mediation and must hire a mediator at their own expense.

**Find more information on our website:**

Oregon Judicial Department : Mediation : Programs & Services : State of Oregon

**www.courts.oregon.gov/courts/multnomah/programs-services/Pages/mediation.aspx**

Visit the court's website for this form in Spanish, Korean, Russian, Traditional Chinese, Arabic and Vietnamese.

MULTNOMAH CIRCUIT COURT

CERTIFIED TRUE COPY

## IN THE CIRCUIT COURT OF THE STATE OF OREGON

## FOR THE COUNTY OF MULTNOMAH

| | |
|---|---|
| **GRAYDON JOHN JUSTIS**, a Resident of Oregon,<br><br>Plaintiff,<br><br>v.<br><br>**THE TORO COMPANY**, a Foreign Corporation; and **WESTERN EQUIPMENT DISTRIBUTORS, INC.**, a Foreign Corporation,<br><br>Defendants. | Case No. 26CV41707<br><br>**COMPLAINT**<br><br>Personal Injury – Strict Products Liability – Negligence<br><br>Filing Fees Based Upon ORS 21.160(d)<br><br>Amount in Controversy: $2,813,349.68<br><br>(Not Subject to Mandatory Arbitration)<br>(Demand for Jury Trial) |

Plaintiff alleges:

**COUNT ONE**
**(Strict Products Liability)**
**(Against All Defendants)**

1.

At all times material hereto:

a) Defendant The Toro Company ("TORO") was a duly organized Delaware corporation, authorized to do business and doing business in the state of Oregon as a manufacturer, designer, tester, inspector, distributor, servicer, retrofitter, lessor, and seller of heavy-duty, commercial-grade utility vehicles, some of which were ultimately sold in the state of Oregon;



**PICKETT DUMMIGAN WEINGART LLP**
Centennial Block, Fourth Floor
210 S.W. Morrison Street
Portland, OR 97204
(503) 226-3628

b) Defendant Toro maintained its headquarters and principal place of business at 8111 Lyndale Avenue, city of Bloomington, county of Hennepin, state of Minnesota, and had its principal manufacturing operation at 200 Sime Avenue, city of Tomah, county of Monroe, state of Wisconsin;

c) Defendant Toro carried on regular and sustained business activities in the county of Multnomah, state of Oregon, by distributing, servicing, and selling Toro-branded machinery through multiple Toro-authorized dealers and distributors, including Parkrose Hardware, located at 10625 N.E. Sandy Boulevard, city of Portland, county of Multnomah, state of Oregon; Stark Street Lawn and Garden, located at 11827 S.E. Stark Street, city of Portland, county of Multnomah, state of Oregon; and Woodstock Mower and Chainsaw, Inc., located at 7247 S.E. Woodstock Boulevard, city of Portland, county of Multnomah, state of Oregon;

d) Defendant Toro was the manufacturer of the incident Workman HDX-D 4WD, Model number 07371, serial number 312000154 (the "TORO WORKMAN" or the "WORKMAN");

e) Defendant Toro described the Workman as a machine designed for and capable of providing a comfortable ride and easy to reach controls, a payload capacity of up to three-thousand-three-hundred-fifty-two pounds (3,352 lbs.), on-demand four (4)-wheel drive, hydraulic disc brakes, and a Tier 4 diesel engine;

f) Defendant Western Equipment Distributors, Inc. ("WESTERN EQUIPMENT") was a duly organized Minnesota corporation, authorized to do business and doing business in the state of Oregon as a distributor, servicer, retrofitter, lessor, and seller of heavy-duty, commercial-grade utility vehicles, including those manufacture by defendant Toro, many of which were ultimately sold in the state of Oregon;

g) Defendant Western Equipment maintained its principal place of business and nerve center at 1750 Salem Industrial Drive, N.E., in the city of Salem, county of Marion, state of Oregon,

h) Willamette Valley Country Club ("WILLAMETTE VALLEY") was a duly organized Oregon domestic nonprofit corporation, authorized to do business and doing business as a golf course and country club, with its principal place of business located at 900 Country Club Place, city of Canby, county of Clackamas, state of Oregon;

i) On May 16, 2012, Willamette Valley purchased the incident Toro Workman from Western Equipment, which utility vehicle was manufactured, designed, tested, inspected, distributed and sold by defendant Toro;

j) Plaintiff Graydon John Justis ("PLAINTIFF" or "JUSTIS") is a resident of the city of Sublimity, county of Marion, state of Oregon.



**PICKETT DUMMIGAN WEINGART LLP**
Centennial Block, Fourth Floor
210 S.W. Morrison Street
Portland, OR 97204
(503) 226-3628

2.

On August 7, 2024, plaintiff Graydon Justis was employed by Willamette Valley as a groundskeeper, operating the Toro Workman within the course and scope of his employment relationship, which was originally sold, leased, and/or rented to Willamette Valley by Western Equipment, a supplier of turf maintenance and irrigation equipment for golf courses, municipalities, institutions and contractors, including turf maintenance and irrigation equipment manufactured by defendant Toro.

3.

On August 7, 2024, plaintiff was working in the course and scope of his employment on Willamette Valley's golf course, located at 900 Country Club Place, city of Canby, county of Clackamas, state of Oregon (the "PROPERTY"). Plaintiff's job duties included watering tee boxes across the Property's eighteen (18) holes, which he accomplished by using the Toro Workman utility vehicle to drive around the expansive one-hundred-fifty-six (156)-acre course.

4.

Plaintiff temporarily stopped the vehicle, holding his right foot on the clutch and his left foot was hanging off the side of the vehicle. His right foot momentarily slipped off the clutch, causing the vehicle to surge forward. Plaintiff's weight shifted out of the driver's seat and onto his left foot, which had slid to the ground, directly in the path of the now-moving vehicle.

5.

Plaintiff was pulled under the vehicle, which proceeded to run him over, crushing his legs and causing severe injury, as described in more particularity below. Two passers-by attempted to free plaintiff from the Toro Workman.

///

///

///

///



PICKETT DUMMIGAN WEINGART LLP
Centennial Block, Fourth Floor
210 S.W. Morrison Street
Portland, OR 97204
(503) 226-3628

6.

The Toro Workman was designed, manufactured, tested, inspected, sold, and/or distributed by defendants Toro and Western Equipment, and each of them. The Toro Workman was in substantially the same condition at the time of its use on August 7, 2024, as it was at the time of its manufacture, distribution, and sale by defendants Toro and Western Equipment.

7.

At all material times, it was reasonably foreseeable to defendants Toro and Western Equipment, and each of them, that an operator of the Toro Workman could accidentally release the clutch while the ignition was turned on and without his full weight on the driver's seat.

8.

At all material times, defendants Toro and Western Equipment, and each of them, knew, or, in the exercise of reasonable care, should have known of the reasonably foreseeable risk of danger created by an operator releasing the clutch while the ignition as turned on and without his full weight on the driver's seat, which, for multiple reasons, created the reasonably foreseeable and unreasonably dangerous risk of harm to workers in general, and plaintiff Justis in particular, of unintended actuation of the controls when the operator is not seated in the vehicle, potentially causing serious injury or death to individuals in general and/or the operator, in particular.

9.

Operator Presence Systems (or "OPS") have existed since 2005, and a patent for a similar Safety Control Device has existed since 1940. OPS use sensors to detect weight, motion, position, and/or presence of the operators in the operator's seat during operation of the machinery.

10.

Other types of utility task vehicles similar to the Toro Workman include an OPS known as a "seat-switch," which is a mechanical switch designed to automatically cut power to the engine once the operator of the machinery is not seated on the operator's seat in the ordinary operator's position.



**PICKETT DUMMIGAN WEINGART LLP**
Centennial Block, Fourth Floor
210 S.W. Morrison Street
Portland, OR 97204
(503) 226-3628

11.

Defendants Toro and Western Equipment, and each of them, are strictly liable for manufacturing, designing, inspecting, testing, leasing, and/or selling the Toro Workman in an unreasonably dangerous and defective condition, for the use intended, and not within the expectations of a reasonable consumer, in one or more of the following particulars:

a) The Toro Workman was not properly designed because it did not have an OPS (*e.g.*, a seat switch, seat-integrated controls, or a seat sensing system) installed in to detect that the operator was seated in the operator's seat during operation, the presence of which would have eliminated the risk of the unintended actuation of the controls when the operator is not seated in the machine subjecting individuals in general and plaintiff Justis in particular to be run over by the vehicle;

b) The Toro Workman was defective and unreasonably dangerous because it did not contain adequate warnings and/or instructions, either in the Operator's Manual or in decals prominently displayed on the Workman itself, that informed operators of the reasonably foreseeable risk of unintended actuation of the controls when the operator is not fully seated in the machine, subjecting workers in general and plaintiff Justis in particular, to being run over by the Workman at a time when defendants, and each of them, knew, or, in the exercise of reasonable care, should have known of the hazardous condition created by the lack of adequate warnings and/or instructions;

c) The Toro Workman was defective and unreasonably dangerous because the risk of operation without adequate warnings and instructions outweighed the benefits of marketing this product without them;

d) In failing to include an Operator Presence Control device, seat-switch, Automatic Stop Device, or other pressure-sensing safety device to cut power to the engine of the Toro Workman whenever the operator left the driver's seat;

e) In manufacturing and selling the Toro Workman in a defective condition that was unreasonably dangerous to the user and not contemplated by the user;

f) In breaching express and implied warranties that the Toro Workman was fit and safe for the ordinary and practical purposes for which it was sold;

g) In failing to adequately inspect the Toro Workman prior to its initial sale, which adequate inspection would have indicated the defects set forth in ¶11(a) through (f) above;



**PICKETT DUMMIGAN WEINGART LLP**
Centennial Block, Fourth Floor
210 S.W. Morrison Street
Portland, OR 97204
(503) 226-3628

h) In failing to adequately test the Toro Workman prior to its initial sale, which adequate testing would have indicated the defects set forth in ¶11(a) through (f) above.

12.

The strict liability of defendants, and each of them, in one or more of the particulars set forth herein, was a substantial factor in causing, contributing to, and/or enhancing, the following injuries to plaintiff Justis, many of which are permanent in nature:

a) Right foot Lisfranc ligament dislocation;

b) Right foot first metatarsal joint lateral subluxation;

c) Right foot contusion;

d) Right foot second metatarsal base subluxation;

e) Sprain of ligament of tarsometatarsal joint of right foot;

f) Traumatic medial retinacular tear of left knee;

g) Sprain of medial collateral ligament of left knee;

h) Dislocation of left patella;

i) Deformity of left knee;

j) Left patellar tendon rupture;

k) Left knee anterior cruciate ligament ("ACL") sprain;

l) Left medial collateral ligament ("MCL") sprain;

m) Left knee lateral patella subluxation;

n) Left knee medial patella retinacular tear;

o) Bilateral Achilles pain;

p) Soreness;

q) Difficulty walking;

r) Left hip/femur dislocation;

s) Left knee dislocation.

///



**PICKETT DUMMIGAN WEINGART LLP**
Centennial Block, Fourth Floor
210 S.W. Morrison Street
Portland, OR 97204
(503) 226-3628

Plaintiff Graydon John Justis reserves the right to amend this Complaint at a later time to more fully describe plaintiff's injuries as deemed necessary, and/or to conform to proof offered at trial.

13.

As a result of the aforementioned incident and injuries suffered therein, plaintiff was required to undergo a right foot first and second tarsometatarsal ("TMT") fusion operation.

14.

At all material times, plaintiff's injuries were substantially caused by the conduct of defendants Toro and Western Equipment.

15.

As a result of the aforementioned injuries, plaintiff has incurred reasonable and necessary medical, hospital, doctor, therapy, nursing, and rehabilitation expenses to date in the approximate sum of $88,495.80. Plaintiff will incur reasonable and necessary medical, hospital, doctor, therapy, nursing, and rehabilitation expenses in the future, the present value of which is the approximate sum of $50,000.00. Plaintiff has lost wages to date in the approximate sum of $24,853.88 and will incur loss of wages and/or loss of earning capacity in the future, the present value of which is the approximate sum of $150,000.00, all to his economic damage in the approximate sum of $313,349.68.

16.

As a result of the aforementioned injuries, plaintiff has suffered permanent injury and loss of enjoyment of life and will continue to suffer from pain and loss of enjoyment of life in the future, all to his noneconomic damage in an amount to be determined by the jury to fully and fairly compensate plaintiff for his damages in accordance with Oregon law, but in an amount not to exceed the sum of $2,500,000.00.

17.

Plaintiff is entitled to interest at the legal rate of 9% per annum for his economically verifiable losses from the date of loss to the date of judgment.



**PICKETT DUMMIGAN WEINGART LLP**
Centennial Block, Fourth Floor
210 S.W. Morrison Street
Portland, OR 97204
(503) 226-3628

18.

Plaintiff reserves the right to amend this complaint at the time of trial to more completely allege his economic losses and/or to conform to proof offered at trial.

19.

Plaintiff hereby demands a jury trial.

**COUNT TWO**
**(Negligence)**
**(Against All Defendants)**

20.

Plaintiff Graydon John Justis realleges and incorporates herein ¶¶1 through 19 of Count One of the First Claim for Relief.

21.

Defendants Toro and Western Equipment, and each of them, acting independently and/or through their employees, were negligent in one or more of the respects alleged in ¶9 of Count One.

22.

Between August 7, 2014, ten years before the date plaintiff suffered his injuries, and the date of the incident on August 7, 2024, defendants Toro and Western Equipment, and each of them, knew, or, in the exercise of reasonable care, should have known, of information being disseminated from a variety of sources regarding the dangers and hazards presented to operators of utility vehicles, including the Toro Workman, created by an operator releasing the clutch while the ignition was turned on and without their full weight on the driver's seat, which, for multiple reasons, created the reasonably foreseeable and unreasonably dangerous risk of harm to workers in general, and plaintiff Justis in particular, of unintended actuation of the controls when the operator is not seated in the vehicle, potentially causing serious injury or death to individuals in general and/or the operator, in particular. This information included:

///

///



**PICKETT DUMMIGAN WEINGART LLP**
Centennial Block, Fourth Floor
210 S.W. Morrison Street
Portland, OR 97204
(503) 226-3628

a) Reports of other similar incidents involving deaths or serious injuries to operators of utility vehicles caused by unintended actuation of the controls when the operator is not seated in the vehicle subjecting workers in general, and operators in particular, to serious injuries or death;

b) Reports in various trade, industry, and governmental publications or other types of literature discussing the risks and dangers presented to operators of vehicles and machinery caused by unintended actuation of the controls when the operator is not seated in the vehicle;

c) Lawsuits filed against manufacturers of utility vehicles, relating to injuries and/or deaths suffered by the unintended actuation of the controls when the operator is not seated in the vehicle;

d) Ongoing engineering studies and analysis of product design and safety considerations, including risk assessment analyses, that could feasibly be incorporated into utility vehicles to prevent injury to operators using these products.

23.

Defendants Toro and Western Equipment, and each of them, after receiving knowledge, or constructive knowledge, between August 7, 2014, and August 7, 2024, through one or more of the above sources, of the foreseeable risk of harm presented to operators of utility vehicles in general, and plaintiff, in particular, were negligent in one or more of the following additional particulars:

a) In failing to notify purchasers, renters, and lessees of its equipment, between August 7, 2014, and August 7, 2024, of the fact that an OPS (*e.g.*, a seat switch, seat-integrated controls, or a seat sensing system) would help to avoid the reasonably foreseeable and unreasonably dangerous risk of unintended actuation of the controls when the operator is not seated in the vehicle, subjecting workers in general, and operators in particular, to serious injuries or death;

b) In failing to notify purchasers, renters, and lessees of its equipment, between August 7, 2014, and August 7, 2024, of the fact that they were receiving ongoing reports of personal injuries and deaths to operators of utility task vehicles caused by unintended actuation of the controls when the operator is not seated in the vehicle subjecting workers in general, and operators in particular, serious injuries or death;

///



**PICKETT DUMMIGAN WEINGART LLP**
Centennial Block, Fourth Floor
210 S.W. Morrison Street
Portland, OR 97204
(503) 226-3628

c) In failing to recall and/or retrofit the Toro Workman, between August 7, 2014, and August 7, 2024, in order to install an OPS (*e.g.*, a seat switch, seat-integrated controls, or a seat sensing system) at one of their authorized dealers.

24.

The negligence of defendants Toro and Western Equipment, and each of them, in one or more of the particulars set forth above, was a substantial factor in causing plaintiff Graydon John Justis to suffer injuries, undergo surgery, and incur damages on Count Two, as set forth in ¶¶12 through 17 of Count One.

WHEREFORE, plaintiff prays for judgment against defendants, and each of them, in the sum of $2,813,349.68; for interest at the legal rate of 9% per annum for his economically verifiable losses from the date of loss to the date of judgment for his noneconomic damages and economic damages; for his costs and disbursements incurred herein; and for any other relief the court deems just and equitable.

DATED this 6th day of August, 2026.

**s/J. Randolph Pickett**

J. Randolph Pickett, OSB #721974
randy@pdw.legal
Samantha Stanfill, OSB #234143
samantha@pdw.legal
Mayra A. Ledesma, OSB #183942
mayra@pdw.legal
Juliana B. Minn, OSB #195746
juliana@pdw.legal
Hannah J. Shilling, OSB #234095
hannah@pdw.legal
PICKETT DUMMIGAN WEINGART LLP

of Attorneys for Plaintiff



**PICKETT DUMMIGAN WEINGART LLP**
Centennial Block, Fourth Floor
210 S.W. Morrison Street
Portland, OR 97204
(503) 226-3628

Oregon Courts
Oregon Judicial Department

# An Option for Resolving Your Dispute: Mediation

**Important Notice:** If you are receiving this form as the filing party, you must serve this form on the responding party.

**What is mediation?**

- A voluntary way to resolve your case with the help of a neutral person (the mediator). Instead of having a judge decide your case, you can work with a mediator to settle your case. You can still go to trial if you do not reach an agreement.
- The mediator will help you and the other party communicate and come up with options to settle the case. The mediator does not take sides or give legal advice.

**How does mediation work?**

- The mediator will explain the process at the beginning of mediation. Parties may meet with the mediator together or the mediator may meet with you each separately. Either party can ask to meet with the mediator alone.
- During mediation, each party has an opportunity to suggest ideas for moving forward. The mediator helps the parties come up with ideas and possible solutions.
- If both parties agree to a resolution, you may not need to go to court or arbitration. There is only a resolution in mediation if both parties agree to it.

**Why should I mediate?**

- It can be faster, less expensive, and less stressful than a trial or hearing.
- Parties decide the outcome instead of a judge.
- Parties can find more creative ways to resolve the dispute.
- It's private and confidential (with a few exceptions).
- It gives parties an opportunity to hear each other's perspectives.
- Parties are more likely to follow mediated agreements than court judgments.
- Parties often report higher satisfaction than in a court trial.

**Things to consider before mediation.**

There may be times when mediation is not appropriate. Tell your mediator or attorney if:

- Mediation poses a risk to your safety;
- You can't make decisions about your case; or
- You think you'll agree to something you don't want.

The mediator may be able to address your concerns so that you can mediate.

**Where do we meet with the mediator?**

Mediation usually happens in person or by video conference (for example, Zoom or Webex).

**Who chooses the mediator?**

Some courts will provide a mediator in landlord-tenant and small claims cases. The parties may also agree on a private mediator on their own.

Another option is to go through a Community Dispute Resolution Center (CDRC). To find one go to: Oregon Office for Community Dispute Resolution | School of Law (uoregon.edu)

You can also find private mediators using these resources:

- Oregon Mediation Association – Find a Mediator: https://ormediation.org
- The mediator search tool at Mediate.com: https://mediate.com

**How much does mediation cost?**

Some courts offer free mediation services in landlord-tenant and small claims cases. Otherwise, the cost for a mediator varies. Private mediators usually charge by the hour. Community dispute resolution centers (CDRCs) may be less expensive.

**Can I get an interpreter for mediation?**

If the court sends the case to mediation, interpreters are available for people with limited English proficiency and for people who are deaf (ASL) or hard of hearing for free. Please let your mediator or the court know that you will need an interpreter prior to your court date or mediation conference.

**How do I get my case to mediation?**

- The court may refer your case to mediation without you asking.
- You can also ask the court to send your case to mediation by filing a request for mediation (check with your local court for forms).
- You may talk with the other person directly and agree on mediation. If you decide to work with a private mediator, contact the mediator directly to learn more about their process.

**My case is going to arbitration — can I mediate my case instead?**

Yes, some courts have an established mediation program and can refer you to a mediator. In these counties, arbitration is not required if the parties don't agree on an outcome in mediation. Instead, they are referred to a judge for further case processing.

If your court does not have a mediation program, the parties can still choose to mediate with a private mediator but may be required to attend arbitration if they can't agree on an outcome.

# Local Mediation Program Information

Court location: Multnomah

## Mediation Programs

**Small Claims**
The Court requires parties to attend mediation orientation. If parties choose to mediate, a mediator will be provided for free.

**Landlord Tenant**
The Court does not provide mediators in Landlord Tenant cases. Parties can request mediation and must hire a mediator at their own expense.

**Civil**
The Court does not provide mediators in Civil cases. Parties can request mediation and must hire a mediator at their own expense.

**Probate**
The Court does not provide mediators in Probate cases. Parties can request mediation and must hire a mediator at their own expense.

**Find more information on our website:**

Oregon Judicial Department : Mediation : Programs & Services : State of Oregon

**www.courts.oregon.gov/courts/multnomah/programs-services/Pages/mediation.aspx**

Visit the court's website for this form in Spanish, Korean, Russian, Traditional Chinese, Arabic and Vietnamese.

MULTNOMAH CIRCUIT COURT